**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| ALL AMERICAN WINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-4269-CV-C-NKL |
| | ) | |
| GREENFIELD WINE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Greenfield Wine Company's ("Greenfield") Motion for Partial Summary Judgment [Doc. # 46]. The issue before the Court is whether Greenfield and All American Wines, Inc. ("All American"), entered into a franchise agreement when Greenfield, in its letter of October 21, 1996, stated: "[Greenfield] appoints All American Wines, Inc. as the Primary American Source and exclusive agent and distributor[1] for all its wines in the state of Missouri." Because the Court finds that Greenfield was not permitted by Missouri law to appoint All American as its distributor/wholesaler, the Missouri franchise statutes do not apply. Therefore, the Court grants Greenfield's Motion for Partial Summary Judgment.

**I.     Background**

**A.     Formation of a Relationship Between the Parties**

---

[1]Both parties agree that distributor and wholesaler are synonymous terms. In this Order, the terms are used interchangeably.

1

Greenfield is a California corporation that produces several brands of wine for distribution throughout the United States. All American, is a Missouri corporation that specializes in acting as a wholesaler for wines in Missouri.

In a letter dated October 21, 1996, Greenfield appointed All American as its Primary American Source ("PAS") of supply in Missouri. Without a PAS, Greenfield, as an unlicensed producer, could not have distributed its wine in Missouri. Mo. Rev. Stat. § 311.180(1); Markway Dep. at 21. The letter appointing All American as Greenfield's PAS stated:

> Dear Mr. Posner[2]:
>
> [Greenfield] appoints All American Wines, Inc., as the Primary American source and exclusive agent and distributor for all its wines in the state of Missouri. This appointment may be cancelled by either party notifying the other in writing sixty days prior to such cancellation.
>
> All previous appointments of Primary American Sources and/or distributors for the state of Missouri are cancelled immediately.
>
> /s/ Tony Cartlidge[3]

See Greenfield Ex. D. Beginning in February 1997, All American filed several compliance forms with the Missouri Department of Public Safety, Division of Liquor Control ("Liquor Control"), wherein All American, as Greenfield's PAS, appointed itself as the distributor for Greenfield's wines in Missouri. All American filed these documents from February 1997 through June 2001 for several wine varietals produced by Greenfield.

---

[2]Alan Posner ("Posner") is the Managing Officer of All American.

[3]Tony Cartlidge ("Cartlidge") is the president of Greenfield.

2

The standard forms filed in each instance were signed by Posner and notarized and they

were issued on All American's letterhead. The forms stated in part:

> In compliance with Regulation No. 70-2.270 of the State of Missouri, we
> wish to appoint All American Wines, Inc. as a distributor for the following
> products:
>
> [Name of wine varietal]
>
> We hereby certify that the creation of this distributor is not in retaliation
> against any existing distributor who refuses to evade or disobey any laws or
> regulations of the State of Missouri relating to intoxicating liquors.

*See* Greenfield Ex. E.

### B. Termination of the Relationship Between the Parties

In a letter dated May 20, 2003, Greenfield notified Liquor Control of its intent to

terminate its relationship with All American. The letter was on Greenfield's letterhead

and it was signed by Cartlidge. It stated in part:

> In compliance with Regulation No. 70-23270 [sic][4] of the State of Missouri,
> we wish to remove [All American] . . . as the distributor for the following
> brands:
>
> [Name of wine varietals]
>
> This termination will be effective May 19, 2003.
>
> We hereby certify that the removal of these brands from the above
> distributor is not in retaliation for refusing to evade or disobey any laws or
> regulations of the State of Missouri relating to intoxicating liquors.

---

[4]The Court is unable to locate such a regulation in the Missouri Code of Regulations.
Presumably, this is a typographical error and Greenfield was referring to Mo. Code Regs. Ann.
tit. 11, § 70-2.270.

3

We hereby certify that the above named distributor has been notified of this action and its being notified again by copy of this letter.

*See* Greenfield Ex. H.

Liquor Control responded to Greenfield's letter in a form letter dated June 5, 2003. The letter stated: "[Greenfield] is not currently licensed in the State of Missouri, therefore, you cannot add or remove distributors." *See* Greenfield Ex. J. Diane Markway ("Markway"), the Fiscal and Administrative Manager for Liquor Control, testified that she oversaw licensing and product registration for Liquor Control. *See* Greenfield Ex. B at 4:8-12. Markway testified that the form letter was correct and that an unlicensed manufacturer of intoxicating liquors cannot appoint or remove distributors in Missouri. *Id.* at 9:20 to 10:16.

In a letter dated June 20, 2003, All American notified Greenfield that it considered the termination conduct to be unlawful. The letter was signed by Posner and it stated, in part:

Dear Mr. Cartlidge:

Your agent's telephone call to me on May 16, 2003 and your letter to [Liquor Control] dated May 20, 2003 concerning our status are unlawful. AS far as we are concerned, we continue to be your exclusive agent, distributor, and Primary American Source for all your wines in Missouri.

*See* Greenfield Ex. K.

On June 25, 2003, in a letter to All American, Greenfield agreed to continue filling All American's purchase orders for an additional ninety days on a "cash on delivery" basis. Nonetheless, All American made no additional purchases from Greenfield.

4

On January 20, 2004, Greenfield notified Liquor Control that Missouri Beverage Company, Inc., would be the new PAS for its wines in Missouri and Liquor Control approved the change of PAS for Greenfield's wines. *See* Greenfield Exs. M and N. Thereafter, Missouri Beverage Company, Inc., named itself as Greenfield's distributor in Missouri.

### C. All American's Complaint

On August 16, 2004, All American sued Greenfield in Missouri state court. The matter was removed to federal court where All American filed an Amended Complaint. All American's Amended Complaint contains three counts. In Count I, All American alleges that Greenfield violated Missouri's franchise statutes when it failed to give All American 90 days' notice and it terminated its relationship with All American without good cause. In Count II, All American alleges that Greenfield breached its contract when it failed to give prior notice of its termination. In Count III, All American alleges that Greenfield breached the implied covenant of good faith and fair dealing.

Greenfield's pending Motion relates only to Count I of All American's Amended Complaint. In its Motion, Greenfield claims that Missouri's franchise statutes do not apply to the relationship between it and All American.

## II. Discussion

### A. Statutory and Regulatory Framework

A franchise is defined by Missouri law as follows:

(1) "Franchise" means a written or oral arrangement for a definite or

5

indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise, including but not limited to a commercial relationship of definite duration or continuing indefinite duration, between a "wholesaler", such wholesaler being a person as defined in this section, licensed pursuant to the provisions of chapter 311, RSMo, to sell at wholesale, intoxicating liquor, as defined in section 311.020, RSMo, to retailers, duly licensed in this state, and a "supplier", being a person engaged in the business as a manufacturer, distiller, rectifier or out-of-state solicitor whose brands of intoxicating liquor are distributed through duly licensed wholesalers in this state, and wherein a wholesaler is granted the right to offer, sell, and distribute within this state or any designated area thereof such of the supplier's brands of intoxicating liquor, or all of them, as may be specified . . . .

Rev. Stat. Mo. § 407.400 (2005). Thus, a liquor franchise agreement in Missouri requires a contractual relationship between a wholesaler, which is licensed in the state of Missouri, and a supplier.

Although Greenfield, in its letter of October 21, 1996, purported to name All American as its distributor/wholesaler, it is clear that Greenfield had no authority to do so because such a relationship is prohibited by Missouri law. *See* Mo. Rev. Stat. § 311.180(1)[1]. *Also see* Markway Dep. at 21. Greenfield did not have a liquor license in Missouri and, therefore, could not have contracted directly with All American to make All American its wholesaler.

Instead, Missouri law requires an unlicensed vintner, such as Greenfield, to appoint a PAS pursuant to Mo. Rev. Stat. § 311.275. The PAS must be licensed in Missouri, making it subject to the Missouri liquor control regulations. Once the PAS has been named, the PAS can then enter into a contract with a licensed wholesaler to

6

distribute the unlicensed vintner's product. Of critical importance to this case is the fact that the PAS contracts with the wholesaler; the unlicensed vintner cannot contract with the wholesaler. It appears that in many cases the PAS appoints itself to be the wholesaler, but the PAS is not required to do so.

While the PAS is identified in the Missouri statutes as the agent of the unlicensed vintner, this does not mean that when the PAS designates a wholesaler it is actually creating a contract between its principal, in this case Greenfield, and the wholesaler. Such a system would make no sense since it would be no different from Greenfield making the contract directly, something forbidden by the statute. Instead, to achieve the goal of state control, which is clearly the objective of this licensing scheme, the contract must be between the PAS and wholesaler, both of which are subject to state control because their licenses are monitored by the state liquor control board.

Given this statutory scheme, it would be illegal for Greenfield to name All American its wholesaler and any attempt to do so would be a nullity. The Court reaches this conclusion even though the Missouri Supreme Court, in *High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493 (Mo. 1992) (en banc), enforced a franchise agreement between an out-of-state producer and an in-state wholesaler. The Supreme Court, in *High Life*, did not expressly address the question of whether an unlicensed supplier could enter into a franchise agreement by naming a licensed wholesaler to be its exclusive distributor. In fact, there is no evidence in *High Life* that the out-of-state producer was unlicensed in Missouri. Furthermore, given the unusually confusing

7

language of the franchise statute, a sentiment endorsed by the Missouri Supreme Court in *High Life*, it would be pure speculation to conclude that the Missouri Supreme Court has found even by implication that an unlicensed supplier can enter into a franchise agreement with a Missouri wholesaler.

### B.  Markway's Deposition Testimony and the Conduct of Liquor Control

The deposition testimony of Markway also reflects that only a licensed supplier or a PAS may appoint a wholesaler.  In her deposition, Markway testified that a manufacturer of intoxicating liquors that is not licensed in Missouri cannot directly appoint a wholesaler; instead, the manufacturer appoints a PAS that is licensed in Missouri and that entity, in turn, appoints the wholesaler.  *See* Greenfield Ex. B at 9:20 to 10:16.  Markway's deposition testimony is consistent with the letter from Liquor Control to Greenfield in June 2003 indicating that Greenfield could not remove or add distributors because it was not licensed in Missouri.  *See* Greenfield Ex. J.

### C.  Parties' Conduct

All American refutes Greenfield's pending Motion by arguing that the Court should look to the substance and the reality of their arrangement--not the semantics of the Missouri statutes.  All American's argument hinges on Greenfield's use of the word "distributor" in its appointment letter from October 1996 and the parties' apparent belief that they were in a franchise relationship.

Regarding the parties' belief about the nature of their relationship, the Court acknowledges that All American secured Cartledge's admission that a notice should have

8

been given. *See* All American Opposition at p. 14. However, All American fails to explain why Cartlidge's misconception about the controlling law is determinative of the case. Similarly, All American fails to explain why Posner's belief about the applicability of the franchise statutes is relevant. Neither gentleman has legal expertise, and past custom and practice which is contrary to law is not a basis for ignoring the law.

Moreover, the parties' conduct and Posner's admissions are in fact consistent with the Court's interpretation of the statutory and regulatory framework. All American's conduct undermines its argument that the parties uniformly believed that Greenfield could appoint All American as its distributor for two reasons. First, Posner submitted forms for over seven years that were drafted by All American in which All American, acting as the PAS for Greenfield, appointed itself as the distributor. If All American believed that Greenfield could legally appoint it as its Missouri distributor, then All American did not need to submit those forms appointing itself as the distributor.

Second, Posner conceded in his deposition that Greenfield could not appoint a distributor in Missouri because it was not licensed to do business in Missouri. *See* Greenfield Ex. C at 27:22 to 28:24. Posner testified that "[i]n order for [All American] to be the distributor [it] first had to be the [PAS], which is empowered to appoint the distributor." *Id.* at 28:21-24. This is consistent with All American filing the forms to appoint itself as the distributor and it is consistent with Markway's deposition testimony.

Based on all of the foregoing, the Court finds that Missouri's franchise statute does

9

not apply to the relationship between Greenfield and All American because Greenfield did not contract with All American to be its wholesaler in Missouri. Greenfield contracted with All American to be its PAS and the PAS, All American, appointed itself as the wholesaler.

The Court acknowledges that it has been reluctant to reach this conclusion, because it believes that if the legislature had considered the issue, it would probably have rewritten the franchise statute to protect All American under these circumstances. However, the Court cannot find a basis in the statutory scheme actually created by the legislature to conclude that a contract between All American and Greenfield purporting to name All American as Greenfield's distributor in Missouri is covered by the franchise statute when such a contract is forbidden by the liquor control statutes.

### D. Estoppel

The Court also rejects All American's argument that because Greenfield sent a letter appointing All American as its distributor and continued that apparent relationship for seven years, Greenfield should be estopped from denying its appointment of All American as its exclusive distributor/wholesaler. All American acknowledged that Greenfield could not appoint it as a distributor when it filed the appointment forms with the Liquor Control and Posner's deposition testimony confirms that he knew Greenfield could not appoint All American as the distributor. Moreover, there is no evidence that Greenfield represented to All American that the parties were in a franchisor-franchisee relationship. To the contrary, the fact that the appointment letter sent by Greenfield in

October 1996 included a sixty-day termination notice–which was a substantially shorter notice than the ninety-day termination notice contained in the franchise statutes–suggests that the parties have no expectation that they were subject to the franchise statute.

Finally, it would be illegal for Greenfield to name All American as its distributor/wholesaler. The doctrine of estoppel is inapplicable to a contract forbidden by law. *See Deja vu of Mo., Inc. v. Talayna's Laclede's Landing, Inc.*, 34 S.W.3d 245, 250 (Mo. Ct. App. 2000) (finding that a contract which violated Missouri's liquor control law was unenforceable and the doctrine of estoppel inapplicable even when such a ruling unfairly benefits one party and burdens the other because both are equally at fault for entering into an illegal contract).

## III.   Conclusion

Accordingly, it is hereby

ORDERED that Greenfield's Motion for Partial Summary Judgment [Doc. # 46] is GRANTED with respect to Count I of All American's First Amended Complaint.


                                            s/ Nanette K. Laughrey
                                            NANETTE K. LAUGHREY
                                            United States District Judge

DATE:  October 3, 2005
Jefferson City, Missouri

11

12